UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>Takari Elliott,<br><br>      Defendant. | Case No. 21-cr-10354-JEK |

**DEFENDANT TAKARI ELLIOTT'S
MOTION FOR SPECIAL VERDICT**

Defendant Takari Elliott joins Anthony Centeio's motion for a special verdict form. Mr. Elliott writes separately to highlight issues particular to him and to propose a verdict form appropriate for the unique issues in his case. Specifically, the law *requires* a special jury question on the issue of whether Mr. Elliott committed murder in furtherance of the alleged RICO enterprise. That is so because this special sentencing factor would raise Mr. Elliott's statutory maximum penalty from 20 years to life. *See* 18 U.S.C. § 1963(a). The verdict form should also ask whether the jury unanimously finds Mr. Elliott agreed that someone in the racketeering enterprise should commit any other racketeering acts and (if so) how many. A special verdict question on all racketeering acts will help the Court at sentencing, will aid appellate review, and will avoid undue prejudice and juror confusion.

**BACKGROUND**

Takari Elliott is charged with one count of RICO conspiracy in violation of 18 U.S.C § 1962(d). The operative indictment alleges that he committed three overt acts in furtherance of the alleged conspiracy: (1) possession of cocaine with intent to distribute on January 11, 2020,

(2) conspiracy to distribute and to possess with intent to distribute cocaine on February 25, 2021, and (3) the murder of Manual Duarte on October 13, 2020.  *See* ECF No. 403 at ¶¶ 10(cc)-(ee) & 11.  The government does not allege that Mr. Centeio participated in any of those overt acts.

Unlike Mr. Centeio, Mr. Elliott does not concede that he is a member of Cameron Street.  The government does not allege that Mr. Elliott is a leader of that group.  And Mr. Elliott does dispute that he engaged in any racketeering acts in furtherance of the alleged RICO enterprise, or agreed that others should do so.  Therefore, the issue of whether the government has proven that Mr. Elliott agreed that at least two racketeering acts would be committed by member of the gang in furtherance of the Cameron Street enterprise is of critical importance to his defense.  A special verdict form is the best way to ensure that the jury has rendered a unanimous verdict as to whether Mr. Elliott agreed that a member would commit a racketeering act and, if so, what type and how many.

## ARGUMENT

**I.    Legal background.**

Mr. Elliott is charged with conspiring to violate 18 U.S.C. § 1962(c), which provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  *See* ECF No. 403 at ¶ 8.  To convict Mr. Elliott, the government must prove that he "knew about and agreed to facilitate 'the conduct of [an] enterprise's affairs through a pattern of racketeering activity.'"  *See United States v. Leoner-Aguirre*, 939 F.3d 310, 316 (1st Cir. 2019) (quoting 18 U.S.C. § 1962(c)).  To prove the pattern of racketeering activity element, the government must show "that the defendant *agreed* that at least two acts of racketeering would be committed in furtherance of the conspiracy."  *See Leoner-Aguirre*, 939

F.3d at 317 (emphasis in original). The jury must be unanimous "as to the types of predicate racketeering acts that the defendants agreed to commit." *See United States v. Applins*, 637 F.3d 59, 82 (2d Cir. 2011) (cited with approval in *Leoner-Aguirre*, 939 F.3d at 317 n.7). Ordinarily, the government need not prove that the defendant personally committed or agreed to commit a racketeering act. *See Leoner-Aguirre*, 9393 F.3d at 317. Nor is there any overt act requirement for RICO conspiracy. *See Salinas v. United States*, 522 U.S. 52, 63 (1997).

Here, however, one of the alleged racketeering acts must be submitted to the jury through a special verdict form because it would increase Mr. Elliott's statutory maximum penalty. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (holding facts that increase statutory maximum must be submitted to jury and proven beyond a reasonable doubt). The statutory maximum penalty for RICO conspiracy is ordinarily 20 years. 18 U.S.C. § 1963(a). The maximum increases to life if "the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* The government has accused Mr. Elliott of racketeering activity punishable by life under Massachusetts law. Specifically, the operative indictment alleges that Mr. Elliott and another alleged co-conspirator "committed an act involving murder" by killing Manual Duarte "deliberately and with premeditated malice aforethought, in violation of Massachusetts General Laws Chapter 265, Section 1."[1] *See* ECF No. 403 at ¶ 11. That, if proven, would increase Mr. Elliott's statutory maximum penalty from 20 years to life and must therefore be submitted to the jury.

---

[1] Murder with deliberate premeditation is first degree murder under Massachusetts law and is punishable by life. *See* G.L. c. 265, § 1.

**II.    The Court should exercise its discretion to ask a special verdict question about all types of racketeering activity supported by evidence at trial.**

Other than the murder sentencing factor, there is no requirement that the jury be asked to make a specific finding as to which acts Mr. Elliott agreed would be committed. *See Leoner-Aguirre*, 939 F.3d at 317. But the Court should exercise its discretion to do so here because a special verdict ensures Mr. Elliott's role in the alleged conspiracy is properly evaluated and provides for informed sentencing and post-trial motion practice in the event of a conviction.

As an initial matter, special verdicts are preferred in complex RICO conspiracy cases. *See Applins*, 637 F.3d at 82 (citing *United States v. Ogando*, 968 F.2d 146, 149 (2d Cir. 1992)). The Eleventh Circuit has compared a RICO conspiracy charge to a multi-object conspiracy, in which general verdicts are "disfavored." *See United States v. Shenberg*, 89 F.3d 1461, 1472 (11th Cir. 1996). That is so because special verdicts facilitate appellate review in complex cases. *See Applins*, 637 F.3d at 82 (quoting *Ogando*, 968 F.2d at 148-49 ("where the offense charged required proof of a specific number of predicate facts and the nature of the proof at trial warrants it, the trial court would be well advised to submit to the jury interrogatories that would allow an assessment of whether the jury's determination of guilt rested on permissible bases")); *see also id.* (quoting *United States v. Ruggiero*, 726 F.2d 913, 926 (2d Cir. 1984) (noting special verdicts are "extremely useful" in complex RICO cases)). This is precisely the type of complex case where a special verdict is most helpful, both to the First Circuit and to this Court in evaluating the sufficiency of the evidence.

A special verdict would be particularly useful in Mr. Elliott's case because there is a strong possibility that the jury will find he agreed to only one racketeering act, or none. If so, the evidence will be insufficient to sustain a conviction for RICO conspiracy because the government will have failed to prove Mr. Elliott agreed to a pattern of racketeering activity.

Although the government is not required to prove that Mr. Elliott committed any racketeering acts to meet the pattern element, it may do so.  And that appears to be the government's approach in this case.  The indictment lists a number of alleged overt acts, including three that specifically identify Mr. Elliott as a participant.  *See* ECF No. 403 at ¶¶ 10(cc)-(ee) & 11.  Further, the government's opposition to Mr. Elliott's pending motion to sever lays out the racketeering acts it intends to prove.  Those acts include the two drug transactions and the alleged murder identified in the operative indictment as overt acts committed by Mr. Elliott.  *See* ECF No. 1246 at 10 & 13.  This is not an uncommon approach.  The most straightforward way to prove that a defendant agreed that someone would commit at least two racketeering acts in furtherance of the enterprise's affairs is to prove that the defendant personally committed those acts.  So although the government does not have to prove that Mr. Elliott (or anyone else) committed an overt act, Mr. Elliott expects that much of the government's case against him at trial will seek to do just that.

Mr. Elliott will dispute each of these alleged overt acts.  It is possible, therefore, that the jury will find he agreed to or personally committed only one racketeering act, or none.  A verdict form that asks the jury to identify both the type and number of racketeering acts that it finds Mr. Elliott agreed to commit will help identify whether the government met its burden of proof on the pattern of racketeering element.  And if Mr. Elliott is convicted, a special verdict would help isolate the theory that was the basis for the conviction and focus the issues on appeal.  *See United States v. Gonzales*, 841 F.3d 339, 344 n.5 (5th Cir. 2016).

A special verdict form would also yield important information to assist this Court at sentencing if Mr. Elliott is convicted.  Both the guidelines calculation and the § 3553(a) factors require the Court to consider the specific racketeering activity found by the jury.  The sentencing

guidelines direct the Court to begin at the base offense level that is the greater of 19 or the "offense level applicable to the underlying racketeering activity." U.S.S.G. § 2E1.1. A special verdict will allow the Court to take the jury's verdict into account in determining what racketeering activity should be included in the guidelines calculation. *See United States v. Salemme*, CR No. 94-10287-MLW, at *4 (D. Mass. Jan. 13, 1997) (noting that special verdict form is relevant to guidelines calculation under § 2E1.1); *cf. United States v. Melvin*, 27 F.3d 710, 716 (1st Cir. 1994) ("Where . . . a statute proscribes more than one type of conduct, with penalties that vary depending on the acts committed, some method of ascertaining the jury's specific finding is necessary."). And an understanding of the jury's verdict as to each racketeering act is relevant input for the Court's evaluation of the § 3553(a) factors, including the need to avoid unwarranted disparities. A general verdict, by contrast, would only tell the Court whether the jury convicted each defendant of participation in a broad RICO conspiracy. Here, the types of racketeering activity involved is highly relevant to each defendant's relative culpability and sentence.

Additionally, a special verdict form best aligns with recent changes in the sentencing guidelines requiring the Court to parse out conduct charged but not proven beyond a reasonable doubt at sentencing. In this regard, Mr. Elliott agrees with Mr. Centeio that the recent amendment to the relevant conduct guideline to exclude most acquitted conduct has changed the sentencing landscape in RICO conspiracy cases. *See* U.S.S.G. § 1B1.3(c). To be sure, typically a trial court may apply sentencing enhancements based on judicially-found facts determined based on a lesser preponderance of the evidence standard. But in a RICO conspiracy case that approach is hard to square with the new prohibition on the use of most acquitted conduct under the sentencing guidelines. A jury that finds a defendant guilty of RICO conspiracy must

necessarily reach an unanimous verdict as to which type or types of racketeering activity the defendant agreed would be committed. All of the constitutional and public policy considerations that led the Sentencing Commission to exclude conduct underlying acquitted charges also support excluding conduct underlying acquitted predicates that the jury has necessarily decided. *See* U.S. Sentencing Guidelines, Amendment 826. The government's preferred approach – leaving the Court and the parties in the dark as to what the jury actually decided – cannot be reconciled with the current relevant conduct guideline.

The special verdict form proposed by Mr. Elliott in this case seeks limited clarification needed to address the underlying charge; it is not a request for the Court to adopt a practice of asking the jury to render a verdict on all sentencing enhancements in every case. RICO conspiracy is unique because the jury necessarily has to decide certain issues that bear on the guidelines calculation, namely which type of racketeering activity the government has proven the defendant agreed someone should commit. That is unlike many provisions of the sentencing guidelines, which turn on facts that are not elements of the offense. But where the jury must decide facts that directly impact the sentencing guidelines, the Court should not blind itself to their verdict.

A special verdict is also necessary in this case to avoid undue prejudice to Mr. Elliott. If the verdict form only has one special verdict question (regarding Mr. Duarte's death), that will draw even more attention to what is already an incredibly serious allegation. And it makes Mr. Elliott look like the more dangerous and culpable defendant even though the government has alleged that it is Mr. Centeio who is a leader of the Cameron Street gang and that Mr. Centeio has shot and killed at least one person. *See* ECF No. 1246 at 7. The verdict form should not

artificially elevate Mr. Elliott's status within the alleged enterprise when the evidence at trial does not warrant it.

Finally, a general verdict form runs the risk of confusing jurors when it comes to applying the law of RICO conspiracy. The jury will be told that the pattern of racketeering element requires proof that Mr. Elliott agreed at least *two* racketeering acts would be committed in furtherance of the conspiracy. *See Leoner-Aguirre*, 939 F.3d at 317. But the jury would be specifically asked about only *one* such act (Mr. Duarte's death) if the Court adopts the government's proposal. Consider one possible scenario. The jury could find the alleged murder of Manual Duarte is the only racketeering act in furtherance of Cameron Street's interests that Mr. Elliott agreed would be committed. In that scenario, the government will have failed to prove the pattern of racketeering activity element of Count Two. But a verdict form that asks only about the murder allegation could lead the jury to overlook that possible outcome.

A special verdict form further mitigates against avoid juror confusion by clearly identifying the types of activity that are or are not racketeering acts. The government intends to introduce evidence of acts that are not racketeering acts but that may be distasteful to jurors. *Cf. United States v. Frega*, 179 F.3d 793, 810 (9th Cir. 1999) (reversing RICO conspiracy conviction where jurors expressed confusion about which bad conduct qualified as racketeering activity). For example, the government has said it plans to introduce video of an alleged celebration of a shooting and a rap video with violent lyrics. *See* ECF No. 1246 at 5. A special verdict form would make clear that such behavior is not itself racketeering activity.

### III.    Mr. Elliott's proposed verdict form.

Mr. Elliott's proposed verdict form is attached. A few notes on Mr. Elliott's proposed verdict form:

First, the verdict form should ask the jury to identify the specific number of racketeering acts that it finds Mr. Elliott agreed would be committed in furtherance of the enterprise, as Judge Burroughs did in the Insys trial. *See United States v. Gurry*, Docket No. 16-cr-10343-ABD, ECF No. 841 and 841-1, ECF No. 931 at 193. As discussed above, there are several possible scenarios where the jury finds Mr. Elliott agreed that one or fewer racketeering acts would take place. It could find that he participated in one murder but otherwise was uninvolved in the gang. It could find that he conspired to distribute drugs on behalf of Cameron Street on one occasion but no others. Or it could find that agreed to no racketeering activity in furtherance of the Cameron Street gang's activities. A verdict form that asks the jury to identify only the types of racketeering activity found but not the number of acts Mr. Elliott agreed would be committed would make it more difficult to ascertain whether a conviction rests on an adequate basis.

Second, the verdict form should only include racketeering activity that has a basis in the evidence at trial. Based on the indictment and representations by the government to date, Mr. Elliott's role in the alleged enterprise was limited and did not include some of the racketeering activity that others are alleged to have committed. If there is no evidence at trial that *Mr. Elliott* agreed someone would commit a particular type of racketeering activity, that activity should not be submitted to the jury.

## CONCLUSION

For the foregoing reasons, Takari Elliott respectfully requests that the Court use the attached special verdict form at trial.

Dated:  October 27, 2025                                         Respectfully submitted,

                                                                 TAKARI ELLIOTT

By his attorneys,

*/s/ Megan A. Siddall*
Megan A. Siddall (BBO No. 568979)
Cloherty & Steinberg, LLP
One Financial Center, Suite 1120
Boston, MA 02111
Tel. (617) 481-0160
msiddall@clohertysteinberg.com


*/s/ Elizabeth J. McEvoy*
Elizabeth J. McEvoy (BBO No. 683191)
Epstein Becker & Green, P.C.
One Financial Center, Suite 1520
Boston, MA 02111
Tel. (617) 603-1100
emcevoy@ebglaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing document was served by electronic mail on all parties on October 27, 2025.

                                    */s/ Megan A. Siddall*
                                    Megan A. Siddall